(109 So. 83)

No. 27494.

### SWOPE et al. v. McCURRY et al.

(May 31, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Appeal and error ⬤⟾1078(3).**

Exceptions and preliminary pleas by defendant overruled in trial court will not be considered on plaintiff's appeal, when not argued nor insisted on.

**2. Mines and minerals ⬤⟾59—Charge of fraud by lessee in gas and oil lease in omitting alleged agreement that lessee was only agent to procure drilling contract held not proven.**

Charge of fraud by lessee in gas and oil lease in omitting alleged agreement that lessee was only agent for lessors to procure drilling contract *held* not proven in suit to annul the leases.

**3. Witnesses ⬤⟾364—Testimony of lessors, in action to annul oil and gas lease, will be weighed by giving consideration to fact that values were materially increased by coming of well.**

In action to annul oil and gas leases, after values were materially increased by coming in of well, testimony of lessors will be weighed by giving due consideration to such increased value.

**4. Mines and minerals ⬤⟾73.**

Oil and gas leases *held*, on their faces, given to lessee as such and not as agent of lessors to secure drilling contract.

**5. Mines and minerals ⬤⟾58—Oil and gas leases in consideration of $1 per acre, requiring approval of titles and providing for drilling of test wells, held not unilateral or to contain potestative conditions.**

Oil and gas leases for consideration of $1 per acre, providing that lessee should pay after approval of titles and providing for drilling of test wells *held* not unilateral or to contain potestative conditions.

Appeal from Ninth Judicial District Court, Parish of Grant; R. C. Culpepper and L. L. Hooe, Judges.

Action by L. C. Swope and others against C. L. McCurry and another. Judgment for defendant named, and plaintiffs appeal. Affirmed.

John A. & R. B. Williams, of Colfax, and White, Holloman & White, of Alexandria, for appellants.

C. B. Roberts, of Ruston, and Elder, Thompson & Digby, of Farmerville, for appellee.

ROGERS, J. L. C. Swope and six other persons brought this suit against C. L. McCurry and the Bank of Colfax to annul certain oil and gas leases made with McCurry; to have the originals of said leases returned to them by the bank; to have the inscriptions of the copies of said contracts erased from the records of the parishes where the

leased property is situated; and for $28,000 damages for slander of their titles. Subsequently, two of the plaintiffs withdrew from the litigation.

Defendant McCurry filed numerous exceptions and pleas, all of which were overruled. He then filed his answer, which was, substantially, a general denial of all the essential facts set forth in plaintiffs' petition. The Bank of Colfax answered it had no interest in the suit, and that it held the leases and contracts subject to the orders of the court.

The court below rejected plaintiffs' demands, recognized McCurry and J. C. Dowling as the owners of the leases, ordered the bank to turn them over to McCurry, and reserved his right to sue plaintiffs, the bank, and Earl Roberts, its president, for any damages he might have suffered by reason of the suit. From this judgment plaintiffs have appealed.

[1] We do not consider it necessary to consider the exceptions and other preliminary pleas filed by defendant McCurry, since they have not been argued nor insisted upon in this court. Passing to the merits, we find, from the record, the facts, and circumstances leading up to plaintiffs' suit are as follows, viz.:

On March 15, 1925, fifteen persons residing in the parishes of Grant and Winn executed separate oil and gas leases to "C. L. McCurry, Agent." The contracts involved some 3,-800 acres of land situated in said parishes, and the consideration stipulated was $1 per acre. After the execution of the leases, two of the lessors, acting for themselves and the other lessors, together with McCurry, deposited them in escrow with the Bank of Colfax, and at the same time attached to the instruments an agreement signed by McCurry and a letter of instructions addressed to the bank and signed by the two lessors and also by McCurry.

In the agreements placed in escrow, McCurry was allowed a reasonable time within which to secure abstracts and to obtain the approval of the titles.

On March 31, 1925, which was 12 days after the leases were signed, McCurry deposited in the Bank of Colfax $3,800, with instructions to place it to the credit of the various lessors.

On April 17, 1925, or 28 days after the contracts were executed, the present suit was filed.

Plaintiffs contend that McCurry was merely their agent; that all they did, in said instruments, was to authorize him to obtain from some responsible third person a drilling contract before the Urania oil well No. 1 came in as a producer or proved to be a failure, that the contracts are unilateral and that they contain potestative conditions.

Defendant McCurry alleged, among other things, in his answer, that the leases were purchased by him in good faith for the account of himself and one J. C. Dowling; that the plaintiffs, together with the bank, had entered into a conspiracy to deprive him of his said leases and had damaged him in a large amount.

Plaintiffs' contention that the agreements were to be null unless McCurry produced a responsible drilling contract before the Urania oil well came in is not based on any clause in the instruments themselves, but upon an alleged understanding and agreement of the parties, which they aver McCurry fraudulently omitted from said instruments.

When plaintiffs offered testimony for the purpose of showing that McCurry was only the agent of the lessors, and that he was to secure a drilling contract for their account prior to the coming in of the Urania oil well, defendant objected on the ground that parol evidence was not admissible to prove agency to sell real estate nor to vary or contradict the terms of the written contract. The objection was overruled, and the testimony was admitted. As the case has developed, we do not deem it necessary to review this ruling. Notwithstanding this testimony was

before him, the judge a quo gave judgment against plaintiffs. We do not find that he erred in so 'doing.

[2] Plaintiffs' charge of fraud was not proved. The contracts were not prepared nor dictated by McCurry. It is true the five plaintiffs testified to the effect that McCurry was merely their agent and that he was to obtain for them as his principals a drilling contract with a responsible oil company before the Urania well came in. In this they were supported by the testimony of the wife of Mr. Swope, and by Mrs. Matheson, his daughter. McCurry, as a witness on his own behalf, denied any such agreement. His testimony was corroborated by nine of the other lessors and by two witnesses whom Swope had endeavored to interest in the proposition and who heard the conversations between the parties. The remaining lessor, Mrs. Norris, originally a plaintiff, but who withdrew from the suit averring she had joined in it through a misunderstanding and that the allegations of the petition were untrue, was absent from the state at the time of the trial.

[3] In weighing the testimony of the lessors, due consideration must be given to the fact that values were materially increased by the coming in of the Urania well, and that the five plaintiffs were testifying to their own financial advantage when they stated that McCurry was merely their agent and not their lessee, whereas the lessors, who, on behalf of defendant, testified otherwise, were, from all accepted standards of human conduct, testifying against their personal interests.

A reference to the contracts themselves discloses that each lease is designated in its caption as an "Oil and Gas Lease." Nowhere in the document is any agency created, nor does it confer any power of sale. Each property owner is named as the lessor in the document signed by him, and "McCurry, Agent," is designated as the lessee. The letter of instructions to the bank refers to the "oil lease executed to C. L. McCurry," and to his contract which is attached. It stipulates for their deposit with the bank, and contains a direction to the bank to deliver them "to the said C. L. McCurry or his assigns upon the payment of $1 per acre." The document signed by McCurry, and attached to the leases, constituted an acceptance of said leases for the consideration of $3,800, and it provides, inter alia, that "the said C. L. McCurry, his heirs or successors, are to begin drilling an oil well after a reasonable length of time has been given for the approval of the titles."

[4] The leases on their faces show that they were given to McCurry as the lessee and not as the agent of the lessors to secure for them a drilling contract from a responsible third person before the Urania well came in.

[5] We do not find that the contracts are unilateral or that they contain potestative conditions. The engagements of the parties are mutual. The plaintiffs agree to lease and McCurry agrees (with a reasonable time allowed for the examination of the titles) to pay $1 per acre and to drill certain wells. Plaintiffs say that the contracts are potestative because it is left entirely with McCurry to deal with himself, though he is unable to drill wells himself, or to deal with some undisclosed principal like Mr. Dowling, who may or may not be a responsible bidder, and that it is entirely within defendant's discretion to find the titles good, bad, or indifferent.

McCurry testified that he was purchasing for himself and J. C. Dowling; that he was the agent of Dowling and had been acting as such for several years. This testimony was not contradicted. The lessee's obligations were distinctly fixed by the contracts. Nothing was left purely to his will. He was compelled under the terms of the agreement to pay for all good titles; he could not arbitrarily reject them. The record does not disclose any inability on the part of the lessee

to comply with his obligations under his contract. In fact, 12 days after the instruments were signed he deposited with the Bank of Colfax $3,800, the entire consideration set forth in the lease contracts.

It is apparent that the vera causa for the present action was the coming in, unexpectedly, of the Urania well on March 23, 1925, four days after the execution of the contracts which are herein sought to be set aside. This well is located about 6 miles from the property covered by the leases. At the time the instruments were signed, the leased property was regarded as wild cat territory, and interested parties had been drilling wells in the vicinity for two years without success. In this situation, the lessors made a good bargain when they obtained $1 per acre for their lands, with the obligation on the part of the lessee to drill certain wells, thereby insuring a thorough test for their property. When the Urania well came in, the conditions were changed, the lands in its vicinity rapidly enhanced in value, and it was manifestly to the advantage of plaintiffs to get out of their previous bargain if it was possible to do so.

Since we have concluded to affirm the judgment, it becomes unnecessary to pass upon the plea of estoppel and acquiescence filed by the appellee in this court.

For the reasons assigned, the judgment appealed from is affirmed, at appellants' cost.